UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAMOUS JOE'S PIZZA, INC., a New York corporation,<br><br>             Plaintiff,<br><br>      v.<br><br>FAMOUS JOE'S PIZZA OF THE VILLAGE, INC. a New York corporation, VICTOR ZARCO, an individual, JOHN AND JANE DOES 1-10, and JOHN DOE CORPORATIONS 1-10,<br><br>             Defendants. | ECF CASE<br><br>Civil Action No.: 17-cv-6541<br><br><br>**COMPLAINT**<br><br><br><br>JURY TRIAL DEMANDED |

Plaintiff Famous Joe's Pizza, Inc., ("Joe's Pizza" or "Plaintiff") for its complaint against the Defendants Famous Joe's Pizza of the Village, Inc. ("Joe's Pizza of the Village") and Victor Zarco ("Zarco"), John and Jane Does 1-10, and John Doe Corporations 1-10 (collectively, the "Defendants") herein states as follows on knowledge as to Plaintiff and otherwise on information and belief:

<u>THE PARTIES</u>

1.     Plaintiff is a corporation organized and existing under the laws of the State of New York with an office and principal place of business at 7 Carmine Street, New York, NY 10014. Plaintiff operates a pizza restaurant under the name and mark JOE'S PIZZA at that location.

2.     Joe's Pizza of the Village is a corporation organized under the laws of the State of New York.  The corporation has a principal place of business at 349 5th Avenue in Park Slope, Brooklyn, New York 11215.   The corporation operates a pizza restaurant under the trade

name JOE'S PIZZA OF THE VILLAGE at 349 5th Avenue in Park Slope, Brooklyn, New York

11215. Joe's Pizza of The Village operates a second pizza restaurant under the trade name JOE'S

PIZZA OF THE VILLAGE at 483 5th Avenue, in Park Slope, Brooklyn, New York 11215.

      3.    Zarco is an individual and the principal shareholder of Joe's Pizza of the

Village. He solely manages, controls, and operates the business and makes all corporate decisions

for the business. He was personally responsible for selecting the name of the corporate defendant and

the trade names of the businesses. He was also personally responsible for the marketing activities of

the businesses and for their web presence including social media. As such, he is personally

responsible for his own acts and the tortious and infringing acts of Joe's Pizza of the Village at the

two locations. Joe's Pizza of the Village is so dominated and controlled by Zarco that the Defendants

are interchangeable with one another.

      4.    Upon information and belief, Defendants John and Jane Does 1-10 are

individuals whose names and address of residences are unknown.

      5.    Upon information and belief, Defendants John Doe Corporations 1-10 are

corporations, the names and addresses of residences of which are unknown.

<u>JURISDICTION AND VENUE</u>

      6.    This action arises under the trademark laws of the United States, the Lanham

Trademark Act of the United States, 15 U.S.C. § 1051 <u>et seq.</u>, and under statutory and common laws

of the State of New York.

      7.    This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1338(a), the Lanham Trademark Act of the United States, 15 U.S.C. § 1121, <u>et seq</u>. This

Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

2

8.      This Court has personal jurisdiction over Defendants because the Defendants are doing business in the State of New York through restaurants located in New York City, Joe's Pizza of the Village is a New York corporation, and Zarco resides and works in the State of New York.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because this is an action brought pursuant to the Lanham Trademark Act, Defendants conduct business in this judicial district, Joe's Pizza of the Village and Zarco are subject to personal jurisdiction here, and the events giving rise to the allegations of this Complaint occurred in this district.

BACKGROUND

A. The History of Joe's Pizza, Its Steller Reputation and Tremendous Goodwill

10.      Plaintiff's founder, Pino Pozzuoli ("Pozzuoli") (now retired) opened a number of pizza restaurants in Boston, Massachusetts in the 1960's, after moving to the United States from Italy.  In 1974, Pozzuoli moved to New York City, and by early 1975, he opened the now heralded pizza restaurant named Joe's Pizza at 233 Bleecker Street, New York, New York, on the corner of Bleecker and Carmine Streets in the heart of Greenwich Village.  In 1975, Pozzuoli adopted the name and mark JOE'S PIZZA because "Joe" is the English equivalent of his Italian given name "Pino" and people here thus referred to him as "Joe."  His business sign identified the business as JOE'S PIZZA.  In about 1983, Plaintiff put up a new JOE'S PIZZA sign which used a script font for the word "JOE's" and showed the word "JOE's" at an angle to the word PIZZA. The lettering is entirely red and appears on a large backlit white background.  Plaintiff has used the mark JOE'S PIZZA in that form since 1983 above the door of Plaintiff's restaurant, and in order ways customary in the trade.  An image ("Bleecker Street Storefront") of the 233 Bleecker Street business on the

3

corner of Bleecker and Carmine Streets with the JOE'S PIZZA script signage is shown below:



11.     In 1996, to keep up with demand, Pozzuoli opened a second location a few door down the street on Carmine, namely at 7 Carmine Street.  Recognizing that the script mark JOE'S PIZZA and sign had developed goodwill and recognition among its consumers, Pozzuoli used the same mark and sign at his second location.  In addition, he placed a photograph of his 233 Bleecker Street storefront, i.e., the Bleecker Street Storefront, in a frame and displayed it prominently on a wall of the 7 Carmine Street restaurant so that all customers of Joe's Pizza would associate Pozzuoli's two pizza restaurants as one, and not consider them competitors.  Plaintiff today still owns and operates the 7 Carmine Street location from which it has served and continues to serve millions of pizza slices to patrons who visit from far and wide.  Below is an image of Plaintiff's

current signage at 7 Carmine Street:



At or around 1996, Plaintiff added the term "famous" to the awning because Plaintiff had indeed become famous and "famous" corresponded with its then adopted corporate name.

12.     After co-existing for a number of years, the original location at 233 Bleecker Street closed due to an unreasonable rent escalation while Plaintiff continued to operate at its second location on Carmine Street as its principal location.  Nevertheless, Plaintiff continued to use the image of its first restaurant as a trademark representing its pizza services and the goodwill long established by its operation at the corner of Bleecker and Carmine.  Currently, the now iconic photo of the first restaurant remains on the walls of its Joe's Pizza restaurants.

13.     Through extended and continued use over the years, the mark JOE'S PIZZA shown on Plaintiff's signage and the Bleecker Street storefront image have become distinctive trademarks associated with Plaintiff's pizza restaurant services.  Indeed, the pizza restaurant has

grown not just a national following, but an international following as well.  Since Pozzuoli retired, Pino Pozzuoli, Jr., (aka "Joe Pozzuoli"), now controls the activities of Plaintiff.

14.     Due to Pozzuoli's hard work and knowhow, Plaintiff's business from its very beginnings received much publicity and acclaim, including rave reviews in numerous publications. That publicity included New York Magazine naming Joe's Pizza "*Best of New York.*" in 1996.  This was New York Magazine's yearly double issue that featured some of the most popular restaurants, bars, clubs etc.  The article describes Plaintiff's pizza as "*the quintessential New York slice.*"  See **Exhibit A.**  New York Magazine has given Joe's Pizza many positive reviews over the years.  In one review, the magazine referred to Joe's Pizza as "*a Greenwich Village institution.*"  See **Exhibit B.**

15.     Time Out New York, a magazine that focuses on arts, recreation, and dining in New York, often lists Joe's Pizza as one of the top pizza shops.  In the November 30, 2006 issue, which features a cover story about pizza, Joe's Pizza is ranked as number 5, and is specifically noted as one of the best late night pizza destinations in NYC.  See **Exhibit C.**

16.     The New York Post printed an article called "PIZZA WARS" and included a photograph of Joe's Pizza and competitor Domino's Pizza.  The article included a comparison and portrayed Joe's Pizza's pizza quite favorably.  See **Exhibit D**.

17.     Joe's Pizza has been a stop on tour bus lines that bring in tourists from all over the world. Scott's Pizza Tours (see http://www.scottspizzatours.com) featured Joe's Pizza as one of the key stops on its New York walking tour, noting that: "If…Kevin Bacon, Ben Affleck and thousands of New Yorkers are right, Joe's is the greatest slice of pizza in the world." See **Exhibit E**.

18.     Joe's Pizza has also appeared in many films, TV Shows, and various other print media through its history.  The business is often utilized by filmmakers who seek an authentic

New York backdrop.  Over the years, there were several instances where filming was also done inside the location.  Films and TV shows where Joe's Pizza can be seen include: <u>Fatso</u> (1980), <u>Law & Order</u> (1990s), <u>The Night We Never Met</u> (1993), <u>Along Came Polly</u> (2004), and <u>Looking For Kitty</u> (2004).  JOE'S PIZZA has also appeared on popular morning talk shows such as the previously named <u>REGIS AND KELLY</u> show.

19.     In 2004, extensive shooting for the highly successful and profitable film SPIDERMAN 2, starring Toby Maguire as Spiderman occurred at Joe's Pizza.  Joe's Pizza is in fact one of the main locations for the movie.  Joe's Pizza is prominent in the entire opening sequence of the film.  Photographs of Peter Parker, played by Tobey Maguire, working for Joe's Pizza are below.




20.     Joe's Pizza also appeared in a subway ad campaign for the popular HBO series, <u>Sex and the City</u>.  This ad campaign showed the star of the series Sarah Jessica Parker playing

Carrie Bradshaw, immersed in the daily New York City experience.  Some of the ad posters, as shown below, showed her eating a pizza slice at Joe's Pizza.

 

      21.    More recently, on an episode of <u>Keeping Up with the Kardashians</u> that aired on November 5, 2017, Kim Kardashian suggested going to the iconic N.Y.C pizzeria, Joe's Pizza to satisfy a craving.  During the episode, there is a shot (shown below) of the front of Joe's Pizza and a scene showing Kim Kardashian, her sister Khloe Kardashian, and their friend Jonathan Cheban buying slices of pizza from the famous 7 Carmine Street location.  This segment of the episode can be viewed at the following URL: <[http://people.com/food/kim-kardashian-diet-khloe-jonathan-cheban-kuwtk](http://people.com/food/kim-kardashian-diet-khloe-jonathan-cheban-kuwtk)>.  <u>Keeping Up with the Kardashians</u> is in its 14th season on E! and the majority of episodes have well over 1,000,000 people in viewership.





22.    Joe's Pizza has received many unsolicited celebrity endorsements as well.

Film star Ben Affleck has often stated how he is a fan of the pizza shop.  In the April 10, 2004

edition of the <u>New York Post</u>, shown below, he said, *"[t]here are tons of pizza places all over New*

*York.  It definitely has the best pizza in the world.  But Joe's [Pizza] is the best of the best."*



23.     In 2002, Nike featured Joe's Pizza storefront in a commercial.   The commercial, entitled Jason Giambi "Goes Yard," portrays a series of NYC images marked by distances from where Jason Giambi, a former famous Yankee player, is about to hit the ball.   As shown in the commercial, the Empire State Building was at 29,287 feet, the Verrazano Bridge was at 92,874 feet away, and there was a screen shot of Joe's Pizza at 40,502 feet away.   A screen shot of the storefront in the commercial showing its distance from Giambi is reproduced below:



24.     Even the videogame GRAND THEFT AUTO III featured an image of Joe's Pizza as part of its effort to replicate an authentic NYC backdrop.  Appearing in that game was an artist's rendition of the image of one side of Plaintiff's storefront at 233 Bleecker Street.  See the below screenshot from the game.  At least 15 million copies of the game have been sold and all those using the game associate the distinctive JOE'S PIZZA (stylized) mark with Plaintiff's business:



11

25.     More recently, Joe's Pizza was featured on a BuzzFeed YouTube video titled "$2 Pizza Vs. $2,000 Pizza" where the hosts review Joe's Pizza vs. Mario Batali's Eataly pizza vs. a $2,000 pizza. While interviewing Mario Batali, the hosts ask "do you know Joe's" and Mario Batali quickly responds "[y]ou mean the best slice in New York, Yes." Below is a screenshot of the video, which is available on YouTube at the following URL: <https://www.youtube.com/watch?v=bcdJgjNDsto&feature=youtu.be&t=1m9s>.   The reviewers determined that Joe's Pizza was the best of the three.



B. Expansion of Joe's Pizza

26.     In 2013, Plaintiff granted its first trademark license to a Joe's Pizza restaurant which opened at 150 East 14th Street, near the corner of Third Avenue in New York City.  Below is a photograph of the 14th Street restaurant:



27.     In 2015, Plaintiff licensed a Joe's Pizza in Brooklyn located at 216 Bedford

Avenue in Brooklyn, New York.   Below is a photograph of the 216 Bedford Avenue location.



28.     In 2017, Plaintiff licensed a Joe's Pizza at 1435 Broadway in New York City

in the heart of Times Square.  Below is a photograph of the 1435 Broadway restaurant.



29.     The entities that operate all of these licensed restaurants are partially owned by

Joe Pozzuli Jr., and two of Pozzuoli's grandchildren, who work for the businesses.

30.     Expansion of Plaintiff's Joe's Pizza restaurants is not limited to New York.

Plaintiff licensed a location in Shanghai, China, which opened in March 2017. Below is a

photograph of the Joe's Pizza restaurant at 81 Wujiang Road, JingAn District, Shanghai, China.



31.     As can be seen in the photographs above **all** of the Joe's Pizza restaurants use

the famous JOE'S PIZZA stylized script and signage including the red lettering on a large white

backlit sign, which are the subjects of Plaintiff's registered trademark rights, and together are protectable under Plaintiff's common law rights.  The licensed restaurants have also added the term "Since 1975" to the sign so it is clear they are associated with Plaintiff and its two original locations on Carmine Street and Bleecker Street.

32.     To serve its customers in various parts of the country where no physical location exists, Plaintiff has partnered with Goldbely, a curated online marketplace for regional and artisanal foods crafted by local food purveyors throughout the United States. Through Goldbely, consumers throughout the United States now have the ability to have Joe's Pizza slices and pies shipped to them regardless of where they are located in the country.

33.     Plaintiff also partnered with Good Uncle to sell Joe's Pizza to consumers throughout the country.  Good Uncle is another food service company whose focus is to bring classic, iconic brands to consumers nationwide, including on college campuses. Through Good Uncle, Plaintiff can offer its iconic pizza throughout college campuses nationwide.

34.     Plaintiff has plans to further expand its locations in New York City, nationally, and internationally, either on its own or via licensees, including in China, the United Kingdom, South Korea, and the Middle East.

C. Plaintiff's Trademark Registrations

35.     Plaintiff registered its long used trademark JOE'S PIZZA (stylized) with United States Patent and Trademark Office (USPTO) and owns all right, title and interest in and to the mark JOE'S PIZZA (stylized), shown below:



This mark is the subject of U.S. Registration No. 4,333,540 issued by the USPTO on May 14, 2013 in connection with restaurant services featuring pizza and take-out restaurant services, and cites a date of first use at least on or before December 31, 1983.  See **Exhibit F**.

36.     Plaintiff also owns all right, title, and interest in and to the mark herein referred to as JOE'S PIZZA (logo):



This mark is the subject of U.S. Registration No. 4,402,507 issued by the USPTO on September 17, 2013 in connection with restaurant services featuring pizza, and for take-out restaurant services, and cites a date of first use of March 2012, and at least as early as December 31, 1983 in an earlier form. See **Exhibit G**.

37.     Plaintiff also owns trademark registrations and pending applications for the marks JOE'S PIZZA (stylized) and JOE'S PIZZA (logo) in various foreign countries, including in China, Hong Kong, Macao, and South Korea.

D. Defendants' Unlawfully Competing Acts and Operations

38.     Zarco is a former employee of Plaintiff.  When Zarco opened his own pizza restaurant at 349 Fifth Avenue in Brooklyn, New York, he chose to name the restaurant FAMOUS JOE'S PIZZA OF THE VILLAGE to trade on the goodwill and reputation of his former employer and incorporated the Defendant corporation under the name Famous Joe's Pizza of the Village to further associate his business to that of Plaintiff.  All of his actions  were performed without authorization or consent from Plaintiff.  The corporate defendant and/or Zarco later opened another second restaurant under the name JOE'S PIZZA OF THE VILLAGE at 483 5th Avenue, Brooklyn, New York.

39.     Zarco's given name is Victor, not "Joe" and the reference to "Joe" in Joe's Pizza of the Village is an obvious reference to Pozzuoli who founded Joe's Pizza.

40.     Below is an image showing the signage at 349 5th Avenue, wherein it can be seen that the business is prominently using the term "famous" as well as "of the Village" to identify itself:



17

41.   **The image below** shows the signage that existed at 483 5th Avenue prior to October 2017 wherein it can be seen that the business is prominently using the term "of the Village" to identify itself:



42.   In early October 2017, to further take advantage of Plaintiff's goodwill and reputation and to add to consumer confusion, Defendants' 483 5th Avenue location changed its outdoor sign to fully replicate Plaintiff's JOE'S PIZZA signage.  Below shows a true and correct copy of an image of the new store's sign at 483 5th Avenue in Brooklyn, New York.



43.    As can be seen below, the restaurant at 483 5th Avenue has also adopted the date "Since 2004" and placed it on its sign in a manner identical to Plaintiff's "Since 1975" on its restaurant signs and in the same location (under the letter "A" of "Pizza").   A side-by-side comparison of Plaintiff's 14th Street location sign and the 483 5th Avenue sign is shown below:

**Plaintiff's JOE'S PIZZA (stylized) Use**



**Defendants' New Use of JOE'S PIZZA BY THE VILLAGE**



As can be seen above, the 483 5ᵗʰ Avenue sign now depicts JOE'S PIZZA in a stylized font substantially similar to, if not almost identical to, Plaintiff's JOE'S PIZZA (stylized) signage. Defendants did not receive permission from Plaintiff to put up this nearly identical sign.

44.    Defendants' continued efforts to confuse or deceive consumers is evidenced inside the restaurants as well.  Defendants have hung collages of photos in their restaurants of Plaintiff's restaurant alongside photos of their own restaurants. In one such collage, Defendants have combined images taken of Plaintiff's restaurant, of Pozzuoli in front of Plaintiff's restaurant, of Plaintiff's celebrity customer Robin Williams with Zarco, and also images of Plaintiff's restaurant during the filming of Spiderman 2 along with an exterior image of Joe's Pizza of the Village restaurant. Below is a true and correct copy of a collage of photographs, which hangs at Defendants' 349 5ᵗʰ Avenue location.





45.     Defendants' maintains a website at the following URL: <joespizzaofthevillage.com>. Defendants' domain name <joespizzaofthevillage.com> incorporates the entirety of Plaintiff's trademark JOE'S PIZZA and makes a reference to Plaintiff's location. Again, Defendants' use of Plaintiff's marks and publicity is without Plaintiff's authorization.

46.     Defendants' website contains various images of Plaintiff's business, Pozzuoli, and Plaintiff's customers, all used without Plaintiff's consent in an effort to confuse consumers into believing that Defendants' restaurants are associated with Plaintiff.  Specifically, Defendants' website contains various photographs of Plaintiff's restaurants on Bleecker and Carmine streets and a picture of Pozzuoli working at Plaintiff's restaurants.  In the photos, Zarco is seen in Plaintiff's restaurants and specifically references Plaintiff's restaurants located in Greenwich Village.

Furthermore, Defendants' website includes a section titled "Movie Stars" which displays numerous photos of Zarco, while an employee of Plaintiff, that were taken at Plaintiff's Carmine Street restaurant. These photos were of Joe's Pizza's celebrity customers, including Robin Williams, Mike Tyson, and Sarah Jessica Parker, and an image of Plaintiff's pizza store during the filming of Spiderman 2. Defendants' website references Plaintiff's restaurants and Pozzuoli throughout further confusing consumers. These photographs, screenshots, text, and images of Defendant's website are attached as **Exhibit H.**

47.     Defendants' social media pages, including Facebook and Twitter, further demonstrate the Defendants' brazen efforts to deceive the public and associate Defendants' restaurants with the Plaintiff. Screenshots of Defendants' social media pages on Facebook and Twitter are attached as **Exhibit I**. As shown in this exhibit, Defendants specifically reference the filming of Spiderman 2 with a picture of actor Tobey Maguire, a before and after photograph of an individual eating pizza with the JOE'S PIZZA (stylized) mark placed over the photographs, and a picture of a framed collage showing an article about Spiderman 2 combined with images of Plaintiff's restaurant. Zarco is seen in some of these photographs. The framed collage is also visible in a photograph posted without permission on Defendants' Facebook page showing the interior of Defendants' restaurant.

48.     Defendants intentionally display these images of Plaintiff's business and of Zarco with Joe's Pizza's customers so that customers seeing the photos would associate Defendants' pizza restaurants with Plaintiff and its business, or think that Defendants are a licensee of Plaintiff.

49.     It has become evident that the term "OF THE VILLAGE" used by Defendants serves no other purpose, but to associate Defendants' business with Plaintiff as Defendants are

located in Park Slope in Brooklyn, which is not a village.  Thus, the "of the village" reference is to Greenwich Village, where Joe's Pizza is located.

50.    It is also evident that Defendants' use of the term "FAMOUS" for the 349 5th Avenue restaurant in Brooklyn, and for its corporate name, is also a direct reference to Plaintiff and Plaintiff's corporate name.  The use of the term "famous" as associated with Defendants' business serves no purpose, but to associate Defendants' business with Plaintiff and its renowned reputation for high quality NY style pizza.  Furthermore, Defendants' use of the term "famous" is nearly identical to the use of the term FAMOUS outside of Plaintiff's Carmine Street location.

E. Confusion among Consumers and a False Impression that an Association Exists with Plaintiff

51.    In 2012, Joe Pozzuoli Jr. was advised by a customer that the customer believed that Plaintiff operated a location in Park Slope.  As a result of that incident, Joe Pozzuoli Jr. decided to go to 483 5th Avenue, where he believed Zarco was operating a restaurant. During his brief and unwelcomed visit, Zarco assured him that Zarco was not "going to do anything illegal." Joe Pozzuoli Jr. assumed from the conversation that Zarco was going to change the name of the restaurants to avoid a litigious situation with Plaintiff.

52.    In 2014, after learning that Zarco continued to operate the pizza restaurant at 483 5th Avenue under the name JOE'S PIZZA OF THE VILLAGE, Joe Pozzuoli Jr. made a second attempt to speak with Zarco, but was unable to reach him.

53.    Throughout 2015 and 2016, Joe Pozzuoli, Jr. personally visited at 483 5th Avenue several times after receiving additional consumer complaints.  However, Zarco was not available at the times Joe Pozzuoli, Jr. visited.

54.    In early October 2017, Joe Pozzuoli Jr. was alerted by a customer about the

new confusingly similar and disconcerting storefront signage that was put up at 483 5th Avenue, shown above. See ¶ 41.  Immediately upon learning of the signage, Plaintiff requested its counsel to send a cease and desist letter to Defendants.  A letter was sent that day.  A copy of the letter dated on October 13, 2017 (without the exhibits) is annexed hereto as **Exhibit J.**  Zarco received the letter and on October 18, 2017, Plaintiff's counsel received an email from an attorney who advised that he needed a "reasonable time period to attempt to complete the attorney-client engagement process prior to your client's taking the legal action."  However, no further communication has been received about that possible engagement from that attorney or from anyone else.  To date, there has been no response to the letter and the infringing actions of Zarco and his businesses remain unabated.

F.  The Instances of Actual Confusion are Increasing

55.    There is no doubt that Plaintiff's patrons and the public have been and will continue to be confused by Defendants' unauthorized uses of JOE'S PIZZA BY THE VILLAGE and the photographs and images of Plaintiff's business in the promotion and endorsement of Defendants' businesses.  Defendants' Yelp page, a website where consumers write reviews and images of restaurants, is full of images, references, and descriptions of Plaintiff's business.  Notably on Yelp, a reviewer by the name of "Nelly A." posted a review on August 17, 2016 stated "FYI THIS IS NOT THE FAMOUS JOE'S PIZZA FROM GREENWICH VILLAGE/ CARMINE ST.  They even try to pass it off as such on their website saying Spider-Man was filmed there. Yes, they did film----at the real Famous Joe's, that is."  Additional poor reviews, such as one from "Ava A." dated August 24, 2017 stating "Pretty bad tomato sauce. I would urge to owner to restate what they're selling. Won't buy again" have caused even greater harm to Plaintiff's brand and Plaintiff's "best  slice in New York" reputation. There are additional reviews on Yelp where consumers compare and believe that

24

there is an association between Defendant's pizza restaurant and Plaintiff's business. Screenshots of Defendants' Yelp page are annexed hereto as **Exhibit K**.  Not only has the Plaintiff been harmed, but its patrons and the public will be harmed and damaged unless this Court grants the relief requested herein.

56.     Public confusion and association of the businesses are further evident on Defendants' TripAdvisor page, annexed as **Exhibit L**.  Despite the TripAdvisor page being associated with Defendants' business, consumers consistently and erroneously post reviews and photographs of Plaintiff's businesses, including Plaintiff's Brooklyn and Carmine Street locations. For example, a TripAdvisor user with the username "livelife h" posted a review on November 1, 2017 on the Defendants' page that included photographs of Plaintiff's pizza box, pizza, and the Carmine Street restaurant.  This has led to Defendants' obtaining a "Certificate of Excellence" from TripAdvisor, despite the fact that many of the reviews and images on the TripAdvisor page were/are associated with Plaintiff's businesses.

57.     Despite Plaintiff's efforts to resolve the issues without court intervention, Defendants' have unabashedly continued to copy Plaintiff and reap the benefits of Plaintiff's goodwill and reputation.  Now, Defendants have gone one step further by practically replicating Plaintiff's store signage, again without Plaintiff's consent and with the knowledge that Plaintiff objected to same.  The new signage has made and will continue to make consumer confusion not just likely, but inevitable.  In spite of Plaintiff's counsel's letter, Defendants have not ceased their willful infringement of Plaintiff's intellectual property, which has resulted in a great deal of actual customer confusion and damage to Plaintiff's reputation and goodwill.  This irreparable harm must be enjoined preliminary and permanently.

## COUNT I
## VIOLATION OF 15 U.S.C. §1114
(Trademark Infringement – Federally Registered Mark)

58.     This cause of action arises under §32 of the Lanham Act, as amended, 15 U.S.C. §1114 et seq., for infringement of a federally registered mark.

59.     Plaintiff repeats and realleges the allegations contained in the forgoing paragraphs 1 through 57 as though fully set forth herein.

60.     The foregoing acts of the Defendants are likely to cause confusion, mistake, and deception in commerce among members of the purchasing public and the trade as to the true source, origin, or sponsorship of their restaurant services.

61.     Defendants' acts have been committed with the knowledge that that such imitation will cause confusion, or to cause mistake or to deceive the consumer and the public.

62.     Defendants' acts are willful and in disregard of Plaintiff's rights.

63.     Defendants have intentionally and willfully used Plaintiff's name and mark knowingly to associate themselves with Plaintiff and Plaintiff's restaurant pizza services.

64.     The acts of Defendants described herein were undertaken without the permission, license, or consent of Plaintiff.  Indeed, Plaintiff has objected to Defendants' acts.

65.     As a result of Defendants' actions, Plaintiff has suffered irreparable injury. Plaintiff has no adequate remedy at law.

66.     Plaintiff is entitled to an order preliminarily and permanently enjoining and restraining the Defendants from engaging in said acts as provided under 15 U.S.C. §1116(a).

67.     Plaintiff is entitled to three times the amount of its profits or damages, together with reasonable attorney's fees, as permitted in 15 U.S.C. §1117.

**COUNT II**
VIOLATION OF 15 U.S.C. §1125(a)
(False Designation of Origin and False and Fraudulent Representations)

68.     This cause of action arises under §43(a) of the Lanham Act, as amended, 15 U.S.C. §1125(a), for false designation of the origin and false description and representation.

69.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 57 as though fully set forth herein.

70.     The foregoing acts of the Defendants constitute false designation of origin, false description, and false representations in commerce that the Defendants' restaurants are that of Plaintiff, or are sponsored, approved, authorized by, or affiliated with Plaintiff, in violation of §43(a) of the Lanham Act, as amended.

71.     Plaintiff has no control over the quality of the food or the service at Defendants' restaurants, with the likely result that Plaintiff's valuable goodwill in its marks and name will be severely damaged. As an ex-employee, Zarco had full knowledge of Plaintiff's business name and reputation, and of Plaintiff's established goodwill and publicity and thus his acts are willful and in disregard of Plaintiff's rights.  Defendants have intentionally and willfully used Plaintiff's publicity and marks knowingly to associate themselves with Plaintiff and Plaintiff's restaurant pizza services.

72.     As a result of the Defendants' acts, Plaintiff has and will suffer irreparable injury.

73.     Plaintiff has no adequate remedy at law for the Defendants' continued acts.

74.      Plaintiff is entitled to an order preliminarily and permanently enjoining and

restraining the Defendants from engaging in said acts.

75.     Plaintiff is entitled to damages, to be trebled, for the willful and intentional conduct of Defendants.

## COUNT III
## VIOLATION OF 15 U.S.C. §1125(d)
(Cybersquatting)

76.     This cause of action for federal trademark cybersquatting arises under 15 U.S.C. §1125(d).

77.     Plaintiff repeats and realleges each allegation in paragraphs 1 to 57 hereof as if fully set forth herein.

78.     Defendants registered and have maintained a website at the domain name <joespizzaofthevillage.com> with first-hand knowledge of Plaintiff's rights in its marks.

79.     Defendants' domain name <joespizzaofthevillage.com> is confusingly similar to Plaintiff's marks and is a reference to Plaintiff.

80.     Defendants registered and have maintained said domain name in bad faith with the intent to divert customers from Plaintiff and to associate themselves with Plaintiff, and to profit from the fame and notoriety of Plaintiff and its reputation.

81.     Defendants have acted in bad faith in registering and operating a website at the domain name <joespizzaofthevillage.com>.

82.     Defendants' foregoing activities have irreparably damaged Plaintiff and have further caused Plaintiff monetary damages in an amount as yet unknown, but if Defendants' foregoing activities continue, it is believed that the damage to Plaintiff will exceed $1,000,000.

28

Defendants' wrongful acts have caused and will continue to cause Plaintiff to suffer irreparable harm for which it has no adequate remedy at law.

### COUNT IV
<u>VIOLATION OF NEW YORK GEN. BUS. LAW §360-l and 349-h</u>

83.     Plaintiff repeats and realleges each allegation in paragraphs 1 to 57 hereof as if fully set forth herein.

84.     By reason of the practices and acts set forth above, Defendants have injured Plaintiff's business reputation.

85.     The foregoing activities of Defendants are without the permission, license, or consent of Plaintiff and, unless enjoined by this Court, Defendants will continue these practices and acts, thereby harming Plaintiff's business reputation and causing Plaintiff immediate and irreparable injury.

86.     Defendants' wrongful acts violate §§ 360-i and 349-h of the New York General Business Law.

87.     Defendants' foregoing activities have irreparably damaged Plaintiff's reputation and have further caused Plaintiff monetary damages in an amount as yet unknown, but if Defendants' foregoing activities continue, the damage to Plaintiff will exceed $1,000,000. Defendants' wrongful acts have caused and will continue to cause Plaintiff to suffer irreparable harm for which it has no adequate remedy at law.

**COUNT V**
UNFAIR COMPETITION AND MISAPPROPRIATION UNDER THE COMMON LAW

88.     Plaintiff repeats and realleges each allegation in paragraphs 1 to 57 hereof as if fully set forth herein.

89.     The aforesaid activities of Defendants misappropriate and trade upon the fine reputation and goodwill of Plaintiff, thereby injuring that reputation and goodwill, and unjustly divert from Plaintiff to Defendants the benefits rightfully belonging to Plaintiff.

90.     The aforesaid activities of Defendants constitute unfair competition, false advertising, and misappropriation under the common law.

91.     The aforesaid activities of Defendants are likely to result in confusion between Defendants' pizza establishments and Plaintiff and/or Plaintiff's pizza establishments, and the establishments of current or future licensees of Plaintiff's.

92.     The aforesaid activities of Defendants have caused and will cause Plaintiff to sustain monetary damage, loss, and injury.

93.     The aforesaid activities of Defendants have been undertaken in bad faith.

94.     Defendants have engaged in the foregoing activities knowingly and willfully and in total disregard of Plaintiff's intellectual property rights.

95.     Defendants' foregoing activities have irreparably damaged Plaintiff and have further caused Plaintiff monetary damages in an amount as yet unknown, but if Defendants' foregoing activities continue, the damage to Plaintiff will exceed $1,000,000. Defendants' wrongful acts have caused and will continue to cause Plaintiff to suffer irreparable harm for which it has no adequate remedy at law.

30

**WHEREFORE**, Plaintiff prays for a judgment against Defendants as follows:

A.      Directing Defendants to take down, preliminarily during the pendency of this action and permanently, all photographs, artwork, collages, signs, banners, and advertising and promotional materials that utilize Plaintiff's publicity, goodwill, and reputation, including Defendants' website, Facebook page, Twitter page, and photographs appearing on other social media such as TripAdvisor and Yelp;

B.      Directing Defendants to take down, preliminarily during the pendency of this action and permanently, the JOE'S PIZZA OF THE VILLAGE SINCE 2004 signage hung on the front of the restaurant located at 483 5th Avenue in Brooklyn, which signage infringes Plaintiffs' common law trademark rights in Plaintiff's signage used in each of Plaintiff's restaurants, as well as Plaintiff's rights in its registered trademark JOE'S PIZZA (stylized);

C.      Directing Defendants, preliminarily during the pendency of this action and permanently, to contact all online social media websites including Facebook, Twitter, Yelp, TripAdvisor, and all online delivery platforms including Seamless and Grubhub, to inform them that Defendants are not associated with Plaintiff and provide proof of such notifications to Plaintiffs' counsel;

D.      Directing Defendants take down, preliminarily during the pendency of this action and permanently, the signage above the doors of their restaurants which utilize the phrase "Famous" and/or "of the Village," which terms connote Plaintiff's Greenwich Village restaurant;

E.      Directing Defendants to take down, preliminarily during the pendency of this action and permanently, the signage above the doors of their restaurants, which utilize the business name "Joe's Pizza" as Defendants' proprietor Victor Zarco is not "Joe;"

31

F.      Directing Defendants to stop, preliminarily during the pendency of this action and permanently, utilizing Plaintiff's registered and common law trademarks complained of herein;

G.      Enjoining Defendants preliminarily during the pendency of this action and permanently hereafter from:

i.     Using the Plaintiff's marks JOE'S PIZZA (stylized) and JOE'S PIZZA (logo), FAMOUS JOE'S PIZZA OF THE VILLAGE, JOE'S PIZZA OF THE VILLAGE, or any mark that incorporates Plaintiff's marks, in any manner;

ii.    Using any mark confusingly similar to Plaintiff's registered marks JOE'S PIZZA (stylized) and JOE'S PIZZA (logo), including but not limited to Defendants' use of the marks FAMOUS JOE'S PIZZA OF THE VILLAGE and JOE'S PIZZA OF THE VILLAGE in any font or style;

iii.   Operating Defendants' pizza restaurant under the business name JOE'S PIZZA, FAMOUS JOE'S PIZZA OF THE VILLAGE, JOE'S PIZZA OF THE VILLAGE, or any other name that is likely to cause confusion or in any way be associated with Plaintiff or with any of Plaintiff's marks or business;

iv.    Misleading the public into thinking that Defendants' pizza businesses are associated with, sponsored by, or endorsed by Plaintiff; and

v.     using the domain name <joespizzaofthevillage.com>;

H.      Directing Defendants to transfer to Plaintiff any and all domain name registrations that include the phrases "joespizza" including, but not limited to the <joespizzaofthevillage.com> domain name;

I.      Finding that Defendants have infringed Plaintiff's marks JOE'S PIZZA (Stylized) and JOE'S PIZZA (logo) in violation of the Lanham Act, 15 U.S.C. §1114 and Defendants are thus liable to Plaintiff for damages or profits therefore, trebled;

J.      Finding that Defendants have violated 15 U.S.C. §1125 (a) of the Lanham Act, and Defendants are thus liable to Plaintiff for damages or profits therefor, trebled;

K.      Finding that Defendants have violated 15 U.S.C. §1125 (d) of the Lanham Act, and Defendants are thus liable to Plaintiff for damages or profits therefor;

L.      Finding that Defendants have violated New York General Business Law §§ 360-l and 349-h, and Defendants are thus liable to Plaintiff for damages or profits therefor;

M.      Finding that Defendants' actions constitute unfair competition and misappropriation under the common law of the State of New York and Defendants are thus liable in damages therefor;

N.      Awarding Plaintiff its damages from Defendants' wrongful and willful acts, such damages to be trebled;

O.      Directing Defendants to account to Plaintiff for all profits resulting from Defendants' infringing activities and awarding Plaintiff such profits, such profits to be trebled;

P.      Awarding Plaintiff's attorneys fees and costs; and

Q.      Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all facts so triable.

Dated:   New York, New York
         November 9, 2017

GOTTLIEB, RACKMAN & REISMAN, P.C.

By:   /s/Maria A. Savio
      Maria A. Savio (MAS 7756)
      msavio@grr.com
      Marc P. Misthal (MM 6636)
      mmisthal@grr.com
      Robert P. Feinland (RF 0661)
      rfeinland@grr.com
      270 Madison Avenue
      New York, New York 10016
      Phone: (212) 684-3900
      Fax: (212) 684-3999

      *Attorneys for Plaintiff Famous*
      *Joe's Pizza, Inc.*