UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
FAMOUS JOE'S PIZZA, INC.,                                  :
                                                           :
                              Plaintiff,                   :
                                                           :    **MEMORANDUM DECISION &**
                 - against -                               :    **ORDER**
                                                           :
FAMOUS JOE'S PIZZA OF THE VILLAGE,                         :
INC., VICTOR ZARCO, JOHN AND JANE                          :    17 Civ. 06541 (BMC)
DOES, JOHN DOE CORPORATIONS,                               :
                                                           :
                              Defendants.                  :
                                                           :
---------------------------------------------------------- X

**COGAN,** District Judge.

This case is before me on plaintiff's contempt motion. Famous Joe's Pizza, Inc. ("JP") alleges that defendants, Famous Joe's Pizza of the Village ("JPV") and its proprietor, Victor Zarco, are in violation of this Court's Preliminary Injunction. Generally, plaintiff claims that defendants continue to improperly display images of JP's restaurants and marks in its own restaurants and on its website, and have posted a misleading biography and inadequate disclaimer. For the reasons discussed below, the Court declines to find defendants in contempt of the Preliminary Injunction, and clarifies the injunction's scope.

## BACKGROUND

The Court presumes familiarity with the procedural posture of the case, and the background facts as stated in the Findings of Fact and Conclusions of Law issued along with the Preliminary Injunction.

Plaintiff alleges that the following conduct by defendants violates the Preliminary Injunction.[1]  First, plaintiff claims that defendants' collages, as well as their website, display photographs of JP's restaurants with plaintiff's marks impermissibly featured.  Second, plaintiff points to the display of three categories of images (distinct from plaintiff's marks) on the walls of defendants' restaurants and on their website that it claims violate the preliminary injunction: news articles about JP; photographs of celebrity patrons at JP; and displays, including on social media, depicting the filming of Spiderman 2 at JP.  Third, plaintiff asserts that defendants' biography and disclaimer are misleading and inadequate – the biography because it allegedly implies that JP no longer exists (or that JPV is a franchise of JP) and that Zarco "learned his craft" from JP's founder, and the disclaimer because it is insufficiently prominent.

In response, defendants contend that their post-injunction conduct is in accord with the Court's order.[2]  They argue that plaintiff's contempt motion is essentially an untimely motion for reconsideration of the Preliminary Injunction, aiming to expand its reach.  Defendants also move for sanctions against plaintiff.

## DISCUSSION

"A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner."  CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016).

---

[1] From plaintiff's opening brief, it appeared that it also took issue with defendants' use of collages, generally.  In its reply brief, however, plaintiff seems to have clarified that it does not do so.

[2] Defendants also contend that a photograph of JP on their website with which plaintiff takes issue was removed well-before plaintiff filed its motion.  Although the parties dispute when it was taken down, the parties do not appear to dispute that it was taken down.

The Preliminary Injunction specifically barred defendants from doing three things: first, using plaintiff's marks in any manner; second, using any mark confusingly similar to plaintiff's marks; and third, deceiving or misleading the public into thinking that JPV was associated with JP. The Court's accompanying Findings and Conclusions limited the scope of the Preliminary Injunction in several ways, two of which are relevant to the instant motion: first, the Court held that because it is undisputed that Zarco worked at JP and received some training there, he could describe that background; second, the Court permitted defendants to display photographs of Zarco's time at JP, so long as those displays were accompanied by a statement disclaiming any association.

As for plaintiff's first and second allegations, the Preliminary Injunction and Findings and Conclusions did not prescribe explicit limits on how Zarco could portray his time working for plaintiff. The Court can only find defendants in contempt if they acted in violation of a clear and unambiguous order, meaning one "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1352 (2d Cir. 1989). The order must "leave[] no uncertainty in the minds of those to whom it is addressed." Hess v. New Jersey Transit Rail Operations, Inc., 846 F.2d 114, 116 (2d Cir. 1988). The enjoined party "must be able to ascertain from the four corners of the order precisely what acts are forbidden." Drywall Tapers & Pointers of Greater New York, Local 1974 of I.B.P.A.T. AFL-CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n, 889 F.2d 389, 395 (2d Cir. 1989). Accordingly, the Court declines to find defendants in contempt for what plaintiff alleges to be impermissible displays, but does take the opportunity to clarify the preliminary injunction. See N.A. Sales Co. v. Chapman Indus. Corp., 736 F.2d 854, 858 (2d Cir. 1984) ("Clarifications of orders previously issued, which may be obtained on

motion or made *sua sponte* by the court, add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous.").

Defendants are not prohibited from displaying photographs recounting Zarco's time in plaintiff's employ, but they may only display photographs that show JP if those photographs feature Zarco, himself. They are barred from displaying *any* photographs in their stores, on their website, or on any kind of social media, that depict plaintiff's marks, restaurants, or patrons at a JP establishment or eating JP's pizza if those photographs do not include Zarco. This includes articles about or reviews of JP, as well as photographs depicting the filming of Spiderman 2. Defendants are on notice that the Court will apply a broad interpretation to what counts as a depiction of JP.

Defendants are additionally cautioned that although they may use photographs that show JP (if they feature Zarco, as described above) to recount Zarco's time there, there is a limit, and it is not generous. Overuse of such photographs carries an intolerably high risk of deceiving or misleading the public into believing that JPV and JP are associated. Accordingly, the Court will be skeptical of any display made up substantially of photographs depicting plaintiff's business. Defendants should be guided, in part, by the presumption that any collage is likely impermissible if images of JP's marks, restaurants, patrons, or publicity (as described above) constitute more than one-fifth of the collage's total surface area or number of discrete images. In other words, a single large image of JP could render a collage impermissible, as could a number of small images.

Defendants should not take this as an invitation to display images of JP outside of collages in its restaurants or on its website. To that end, by either surface area or quantity, no

more than one-fifth of the total discrete images outside of collages on JPV's restaurants' walls or website may display images of JP.

These limitations do not offer a safe-harbor. It is entirely possible that a display consisting of fewer depictions of Zarco's time at JP than the amount prohibited by these clarifications could still violate the Preliminary Injunction if it is clearly misleading. Zarco has owned and operated JPV since 2004 – his time at his own pizza shop should dominate his story.

This clarification is consistent with the Preliminary Injunction, which primarily sought to limit consumer confusion between JPV and JP, while still permitting Zarco to relate the fact of his past employment at JP. To comply, defendants will have to alter some of their displays, and must do so within two weeks of the issuance of this order. Defendants should keep in mind that in its Findings and Conclusions, the Court has already found that they acted in bad faith. The sun does not rise anew each day on their behavior; the Court will evaluate any future allegations of violations against defendants' prior attempt to capitalize on plaintiff's reputation.

Plaintiff's third allegation focuses on the text of JPV's biography and the disclaimer it contains. The Court instructed defendants in its Findings and Conclusions that defendants could describe Zarco's time at JP through a biography and photographs, but that any such display "must be accompanied by a prominent disclaimer making clear that there is no association between the two businesses."

Plaintiff raises several concerns: for one thing, it asserts that the biography is misleading by suggesting that JPV is a franchise of JP. In support of that point, plaintiff points to two statements in the biography: first, "[Zarco] started his career in 1989 at the Joe's Pizza that was then at the corner of Bleecker and Carmine in the West Village of Manhattan . . . ;" and second, "***Time Out Magazine*** lists our Joe's Pizza . . ." (emphasis in original). The Court has little doubt

that defendants intended these statements to suggest association between JPV and JP. However, because defendants can reasonably put forth that they were recounting Zarco's story, as permitted under the Preliminary Injunction and Findings and Conclusions, the Court will not find them in contempt. That being said, defendants must rewrite all instances of Zarco's biography within two weeks of the issuance of this order in a way that eliminates all ambiguous language (such as, "at *the* Joe's Pizza," or "lists *our* Joe's Pizza."). Defendants have decided to skirt the line as closely as they possibly can. They are advised to stay well clear of it going forward.

Plaintiff also claims that JP did not employ Zarco in 1989, and that Zarco did not learn his craft from JP's founder, as also stated in the biography. In its Findings and Conclusions, the Court held that Zarco began his employment at JP in 1989 and did, indeed, learn some of his craft from JP's founder. Plaintiff has not put forth good reason to change that finding, now.

Finally, plaintiff argues that the disclaimer – "Victor opened his own Joe's Pizza at 483 Fifth Avenue, Brooklyn, in the Park Slope neighborhood, ***an independent slice shop with no business affiliation to Pozzuoli's 'Joe's Pizza.'***" (emphasis in original) – is inadequate in the context of the many photographs of JP surrounding it. The Court acknowledges that any such recounting is inevitably somewhat suggestive of a connection between JPV and JP, which is exactly why it ordered that defendants accompany the biography with a prominent disclaimer.[3] The one that defendants have employed is adequate.

Defendants also move the Court to sanction plaintiff. The sanctions motion is frivolous. Plaintiff's motion is based on sound, good faith arguments. The conclusion is unavoidable that defendants are still trying to capitalize on plaintiff's business, and it is only the lack of specificity in the language of the Preliminary Injunction that has saved them from contempt.

---

[3] The Court also notes that the modification required by its clarification of the scope of the Preliminary Injunction detailed above should assuage some of plaintiff's concerns as to the effect of the disclaimer.

## CONCLUSION

Plaintiff's motion for contempt and defendants' motion for sanctions [46, 47] are DENIED. The Preliminary Injunction is clarified as described above.

**SO ORDERED.**

                                                                                                     _____
                                                                                                                                U.S.D.J.

Dated:  Brooklyn, New York
         April 16, 2018